**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTMAS DÉCOR BY CREDE LLC, et al., Plaintiffs, | ) | Civil Action No. 2:25-cv-01216 |
| v. | ) | |
| UNITED STATES DEPARTMENT OF LABOR, et al., Defendants. | ) | Chief United States District Judge |

**<u>MEMORANDUM AND ORDER</u>**

## I. MEMORANDUM

Before the Court are two pending motions: the Motion to Dismiss, or in the Alternative, for Partial Summary Judgment filed by all Defendants (Doc. 17); and Plaintiffs' Motion for Summary Judgment (Doc. 25). For the reasons that follow, the Court will grant Defendants' motion as to Counts IV through VI and dismiss these Counts. The Court will otherwise deny both motions without prejudice to refiling following the Supreme Court's ruling in <u>Dep't of Lab. v. Sun Valley Orchards, LLC</u>, No. 25-966 (U.S. cert. granted Apr. 27, 2026).

### A. Background

This case comes before the Court following prior administrative proceedings conducted by the United States Department of Labor ("DOL"). No genuine issues of material fact remain, and the undisputed facts are as follows. Plaintiffs Crede Lawn Service, LLC ("Crede Lawn") and Christmas Décor by Crede LLC ("Christmas Décor") are companies located in West

Virginia[1] who each received notices from DOL's Wage and Hour Division ("WHD") on December 30, 2024, assessing civil monetary penalties (and for Christmas Décor, back wages) for violations of the H-2B employer-sponsored nonimmigrant visa program. See Defs.' Concise Statement of Material Facts (Doc. 19) at ¶¶ 2–5, 8–12; Pls.' Responsive Concise Statement of Material Facts (Doc. 26) at ¶¶ II.10–.13, .16–.17, .29, .31–.33, .36–.43 [hereinafter Pls.' SOFs]; Doc. 1-2 at 1–7 (notice received by Crede Lawn); Doc. 1-7 at 1–11 (notice received by Christmas Décor).

Both Plaintiffs timely requested a hearing and jury trial. See Doc. 19 at ¶¶ 6, 13; Doc. 26 at ¶¶ II.20–.21, .46–.47; Doc. 1-3 at 1–2; Doc. 1-8 at 1–2. Though a hearing was initially scheduled for each Plaintiff,[2] the cases were consolidated on July 24, 2025, before either hearing took place. See Doc. 19 at ¶ 14; Doc. 26 at ¶¶ II.27, .50, .53; Notice of Hr'g (Doc. 1-6) at 1 (to Crede Lawn); Notice of Hr'g (Doc. 1-10) at 1 (to Christmas Décor); Order Granting Administrator's Mot. for Consolidation (Doc. 1-12) at 1. Plaintiffs' requests for a jury trial were not granted. See Doc. 26 at ¶¶ II.23, .26, .28, .49, .51; Doc. 1-6 at 1–2; Doc. 1-10 at 1–7; Doc. 1-12 at 1–2.

On July 29, 2025, the United States Court of Appeals for the Third Circuit held in a separate case that an agricultural employer who was assessed civil monetary penalties and back wages by DOL for breaching "an employment agreement formed under the H-2A nonimmigrant visa program" was "entitled to have its case decided by an Article III court," following the United States Supreme Court's decision in SEC v. Jarkesy, 603 U.S. 109 (2024). Sun Valley

[1] Though not included in either party's concise statement of material fact, it appears that Plaintiffs share a common owner. See Administrator's Mot. for Consolidation (Doc. 1-11) at 2.
[2] Adjudicators were selected by the Office of Administrative Law Judges ("OALJ"), the DOL office with authority to adjudicate these claims. See Doc. 26 at ¶ II.4.

Orchards, LLC v. U.S. Dep't of Lab. ("Sun Valley I"), 148 F.4th 121, 124 (3d Cir. 2025), cert. granted sub nom., Dep't of Lab. v. Sun Valley Orchards, LLC ("Sun Valley II"), 146 S. Ct. 2614 (U.S. Apr. 27, 2026) (mem.) (No. 25-966) (oral argument scheduled for November 10, 2026). Three days later, the Administrative Law Judge ("ALJ") who was assigned to Plaintiffs' case canceled the scheduled hearing and placed the case "in abeyance until further notice," in light of the Sun Valley I holding. Doc. 19 at ¶ 15; Order Cancelling Hr'g and Placing Case in Abeyance (Doc. 1-15) at 1.

Plaintiffs filed the present action on August 8, 2025, alleging that DOL's failure to provide them with a jury trial before an Article III judge violated their constitutional rights under the Seventh Amendment (Count I), Article III and the separation of powers (Count II) and the Fifth Amendment's Due Process Clause (Count III).[3] See Doc. 1 at ¶¶ 107–26. They further allege this failure violated their statutory rights under sections 706(2)(B), 706(2)(A) and 706(2)(D) of the Administrative Procedure Act ("APA") because it constituted agency action that is contrary to a constitutional right, power, privilege or immunity (Count IV), arbitrary and capricious (Count V) and without observance of procedure required by law (Count VI). See id. at ¶¶ 127–48. They seek declaratory and injunctive relief invalidating both the administrative

[3] Plaintiffs identify the current Defendants as follows: DOL; the Office of Administrative Law Judges of the United States ("OALJ"); Lori Chavez-DeRemer, Secretary of DOL; Andrew B. Rogers, Administrator of WHD; Chief ALJ Stephen R. Henley, who assigned ALJs to Plaintiffs' cases; ALJ Natalie A. Appetta, who was initially assigned to Crede Lawn's case; and ALJ Drew A. Swank, who was initially assigned to Christmas Décor's case and is currently assigned to the consolidated case. See Doc. 26 at ¶¶ II.3–.9; Defs.' Resp. to Pls.' SOFs (Doc. 29) at ¶ 6 (clarifying that Andrew B. Rogers is the Administrator—not the "Acting" Administrator—of WHD, as Plaintiffs originally indicated). Although Andrew B. Rogers is not named in the Complaint, he has replaced Donald M. Harrison, III, who is named in his official capacity as the "Acting Administrator" of WHD. See Compl. (Doc. 1) at ¶ 8; Defs.' Mot. to Dismiss, or in the Alternative, for Partial Summ. J. (Doc. 17) at 1 n.1.

proceedings against them and DOL's administrative regulations authorizing those proceedings. See id. at 32.

Defendants' motion seeks dismissal of or summary judgment on Plaintiffs' constitutional claims under Federal Rules of Civil Procedure 12(b)(6) and 56(c), see Doc. 17 at 1–2, and dismissal of Plaintiffs' APA claims for lack of subject-matter jurisdiction under Rule 12(b)(1) because there has been no final agency action, see id. at 1. Plaintiffs' motion requests entry of summary judgment in their favor on all claims. See Pls.' Mot. for Summ. J. (Doc. 25) at 1.

Enforcement of the civil penalties and back wages against Plaintiffs is stayed while the administrative proceedings remain pending, and the parties have agreed to seek to continue the current stay of those proceedings until resolution by this Court of the present action. See Mem. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, for Partial Summ. J. (Doc. 18) at 17; Joint Status Report and Joint Mot. to Set Briefing Schedule (Doc. 15) at 2; 29 C.F.R. § 503.43(a) (providing that once "a request for an administrative hearing is timely filed, the Administrator, WHD's determination will be inoperative unless and until the case is dismissed or the ALJ issues an order affirming the decision").

**B. Article III, the Seventh Amendment and the Public Rights Exception**

Plaintiffs' claims largely stand or fall based on the public rights exception to Article III and the Seventh Amendment's right to a civil jury trial. See U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . .").

Analysis under the public rights doctrine is a two-step inquiry. Courts first must decide whether Article III or the Seventh Amendment is implicated by asking whether the case is legal in nature, or "made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," Sun Valley I, 148 F.4th at 128 (quoting Jarkesy, 603 U.S. at 128);[4] if it is, Courts then must decide whether the public rights exception nonetheless permits adjudication by an administrative agency without a jury. See Jarkesy, 603 U.S. at 120, 128–29 (describing public rights as those that "historically could have been determined exclusively by [the executive and legislative] branches," including immigration matters (alteration in original) (quoting Stern v. Marshall, 564 U.S. 462, 493 (2011))).

The United States Supreme Court's 2024 decision in Jarkesy significantly narrowed the public rights exception. See id. at 131 ("The public rights exception is, after all, an *exception*." (emphasis in original)). In applying that newly narrowed doctrine, the United States Court of Appeals for the Third Circuit likewise broke new ground in Sun Valley I, declaring for the first time that DOL's in-house enforcement procedures to assess civil monetary penalties and back wages for violations of the H-2A nonimmigrant visa program did not fit within the public rights exception. See Sun Valley I, 148 F.4th at 131 ("[B]ecause the H-2A labor certification regulations mainly concern the federal government's local interest in domestic wages, DOL's action does not fit within the public rights exception to Article III adjudication."); but see Del Valle Fresh, Inc. v. U.S. Dep't of Lab., No. 7:25-cv-03721, 2026 WL 1001726, at *7, *10–11 (D.S.C. Mar. 11, 2026) (slip copy) (applying the public rights exception to DOL enforcement

---

[4] Analysis of the public rights exception under Article III and the Seventh Amendment often is intertwined. See, e.g., Jarkesy, 603 U.S. at 127 (analyzing the public rights exception for a Seventh Amendment claim as though the jury right under the Seventh Amendment follows an Article III forum); Sun Valley I, 148 F.4th at 128–31 (analyzing the public rights exception for an Article III claim by applying the principles articulated in Jarkesy, including at step one).

actions for civil monetary penalties and back wages under the H-2A program); Triple R Farms, LLC v. U.S. Dep't of Lab., No. 5:26-cv-00087, 2026 WL 1712264, at *1, *8 (E.D. Ky. June 13, 2026) (slip copy) (same); Butler Amusements, Inc. v. U.S. Dep't of Lab., No. 24-1042, 2025 WL 2457687, at *1, *9 (D.D.C. Aug. 26, 2025) (slip copy) (same, regarding the H-2B program), appeal dismissed, No. 25-5388, 2026 WL 1183014 (D.C. Cir. Mar. 12, 2026) (unreported); C.S. Lawn & Landscape, Inc. v. U.S. Dep't of Lab., No. 23-cv-1533, 2026 WL 820976 (D.D.C. Mar. 25, 2026) (slip copy) (same, regarding the H-2B program), appeal filed, No. 26-5114 (D.C. Cir. filed Apr. 13, 2026).

Defendants do not dispute that Third Circuit precedent controls; instead, they seek to distinguish this case from Sun Valley I on the facts. See Doc. 18 at 27 n.5 ("The government maintains that Sun Valley was decided incorrectly . . . [; but] Sun Valley's reasoning is not applicable to the facts of this case."). It is true that important differences exist between the H-2A enforcement action at issue in Sun Valley I and the H-2B enforcement action at issue in this case that could affect the Court's analysis of the public rights exception.[5]

[5] For instance, the regulations governing the H-2A program use contract language that is absent from the H-2B regulations. Prior to applying for employment certification under the H-2A program—a prerequisite to filing an H-2A visa petition—an employer must submit a "job order" outlining the terms of employment, including compliance with the program's requisite working conditions and terms. See Sun Valley I, 148 F.4th at 124 (citing 20 C.F.R. § 655.121(f)) (citing generally 20 C.F.R. § 655.122). The job order itself becomes the employment contract, absent another written agreement, and DOL explicitly is authorized to enforce "contractual obligations." Id. (quoting 8 U.S.C. § 1188(g)(2)) (citing 20 C.F.R. § 655.122(q)). While an H-2B employer also must submit a similar "job order" to obtain employment certification, see 20 C.F.R. §§ 655.15(a), .18, the applicable enforcement provisions do not contain the same explicit reference to "contractual obligations," see, e.g., 8 U.S.C. § 1184(c)(14)(A), and the H-2B regulations do not similarly designate the job order as the contract. See Cuellar-Aguilar v. Deggeller Attractions, Inc., 812 F.3d 614, 618 (8th Cir. 2015) ("[T]he federal regulations governing the H2-B [sic] program lack any provision analogous to the H-2A program's statement that, in the absence of a written contract, 'the required terms of the job order and application . . . shall be the work contract.'" (citation omitted)). This part of the reasoning in Sun Valley I, at least, does not apply directly to support the same conclusion here. See Sun Valley I,

However, enough overlap exists that the Supreme Court's decision in Sun Valley II could determine the outcome here. Compare Sun Valley I, 148 F.4th at 129 n.5 ("[B]ecause the back wages here were imposed to deter wrongdoers, rather than solely to provide restitution, they are properly characterized as legal."), with Doc. 1-7 at 1–2 (assessing similar "back wages" on Christmas Décor for providing United States workers a lower rate of pay than H-2B workers); see also 8 U.S.C. § 1184(c)(14)(C) (directing under H-2B enforcement provisions that "the highest penalties shall be reserved for willful failures to meet any of the conditions of the petition that involve harm to United States workers").

Both programs sit at the intersection of labor law and immigration enforcement, and analysis of the public rights doctrine requires a precise parsing of each. See Jarkesy, 603 U.S. at 129 (recognizing immigration as an area traditionally within the "plenary power" of the political branches and the public rights exception); but see Sun Valley I, 148 F.4th at 130–31 (concluding that enforcement of rules regarding wages and working conditions for "foreign and domestic workers alike"—as opposed to removal from participation in the H-2A program—"mainly concern[s] the federal government's local interest in domestic wages" and "do[es] not directly address [] admission and exclusion"). "History . . . looms large in the public rights analysis," and both programs descend from the same H-2 predecessor and were created via the same Act for similar purposes. Sun Valley I, 148 F.4th at 127; see Cuellar-Aguilar, 812 F.3d at 617 ("[T]he Immigration Reform and Control Act of 1986 . . . divided the H-2 program to provide either H2-A [sic] visas for agricultural work or H-2B visas for non-agricultural work."

---

148 F.4th at 128 ("It is the violation of the terms of that work contract, rather than the regulations that shape it, that supports H-2A enforcement actions."); but see Cuellar-Aguilar, 812 F.3d at 620–21 (reversing dismissal of H-2B workers' state law breach of contract claims based on implied incorporation of "the terms of the labor certification applications"—including the program's regulations governing wages—into their contracts).

(citations omitted)); Butler, 2025 WL 2457687, at *8 ("[The H-2] regime ensures that an adequate supply of labor for U.S. employers exists by permitting lawful employment of noncitizens and simultaneously protects jobs of U.S. employees.").

The Supreme Court's decision in Sun Valley II will necessarily involve consideration of these shared concerns. See Sun Valley II, 146 S. Ct. 2614 (2026) (mem.) (granting certiorari on the issue of "[w]hether Article III of the Constitution precludes the Department of Labor from adjudicating proceedings to collect monetary remedies from employers who have allegedly violated the terms and conditions of employment of H-2A workers and domestic workers in corresponding employment"). As such, this Court is reluctant to make a constitutional ruling on the eve of an impending Supreme Court decision that will uphold or reverse binding precedent regarding a closely analogous program.

Though neither party has requested it, the Court will stay ruling on these issues pending the Supreme Court's decision in Sun Valley II. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); Bechtel Corp. v. Loc. 215, Laborers' Int'l Union, 544 F.2d 1207, 1215 (3d Cir. 1976) ("In exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.").

When deciding whether to stay a case, courts consider:

> (1) [t]he interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the

> convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil . . . litigation.

Resco Prods. v. Bosai Mins. Grp. Co., Ltd., No. 06-235, 2010 WL 2331069, at *5 (W.D. Pa. June 4, 2010) (unreported) (second alteration in original) (quoting Morgenstern v. Fox Television Stations of Phila., No. 08-0562, 2010 WL 678113, at *2 (E.D. Pa. Feb. 23, 2010) (unreported)).

Considering these factors, the Court finds that a stay in this case would not prejudice Plaintiffs, as their obligation to pay WHD's assessments or litigate their case before an ALJ likewise is stayed. See Doc. 19 at ¶ 15; Doc. 18 at 17; 29 C.F.R. § 503.43(a). Nor would it burden Defendants, for the same reasons. While the United States Supreme Court may release its decision in Sun Valley II as late as June, 2027, it is in all parties' and the public's best interests to resolve this case with an accurate understanding of the applicable doctrine. A stay will preserve judicial economy by clarifying the limits of the public rights exception in a closely analogous context.

Therefore, the Court will deny both parties' motions (Docs. 17 and 25) with respect to the public rights exception, without prejudice to refiling following the Supreme Court's ruling.

**C. Fifth Amendment Due Process**

Plaintiffs additionally argue that the proceedings against them violated the Fifth Amendment's protection against deprivation of "life, liberty, or property, without due process of law" in three ways: (1) DOL agents performed both investigator and adjudicator roles; (2) Plaintiffs were not granted a jury trial before an Article III judge; and (3) the Federal rules of Evidence and Federal Rules of Civil Procedure did not apply. U.S. Const. amend. V; see Doc. 1

at ¶¶ 123–25; Pls.' Combined Mem. in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, for Partial Summ. J. and in Supp. of Pls.' Mot. for Summ. J. (Doc. 27) at 24–25.

To the extent that Plaintiffs' due process claim is based on the same violation of Article III and the Seventh Amendment discussed above, the Court likewise will hold its ruling on this claim in abeyance pending the Supreme Court's decision in Sun Valley II. To the extent it relies on the three alleged procedural defects listed above as an independent basis for the relief requested, the Court finds no precedential support for Plaintiffs' position.

First, as Defendants correctly point out, the Supreme Court has clearly held that "the combination of investigative and adjudicative functions [in an agency adjudication] does not, without more, constitute a due process violation." Withrow v. Larkin, 421 U.S. 35, 58 (1975); see Doc. 18 at 33–34; Combined Reply in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, for Partial Summ. J. and Opp'n to Pls.' Mot. for Summ. J. (Doc. 28) at 22. Concerns may arise when the circumstances of an individual's performance of both roles suggest "a risk of actual bias or prejudgment" that is "too high to be constitutionally tolerable." Withrow, 421 U.S. at 47, 55 ("The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the [agency] members at a later adversary hearing."). Plaintiffs have alleged no such circumstances here. See Doc. 27 at 24–26; Pls.' Reply in Supp. of Pls.' Mot. for Summ. J. (Doc. 31) at 10–11 (admitting that different individuals from different DOL offices handled each stage of Plaintiffs' cases and pointing to no additional facts to suggest bias).

Nor is there precedent for an independent due process right to a civil jury trial when the Seventh Amendment does not demand it, or to application of the Federal Rules of Evidence or Federal Rules of Civil Procedure in all contexts. See Goldberg v. Kelly, 397 U.S. 254, 266

(1970) (explaining that due process does not in all cases mandate a "judicial or quasi-judicial trial"). "The essence of due process is notice and an opportunity to be heard," not a right to a particular set of procedural rules. Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot., 903 F.3d 65, 74 (3d Cir. 2018); Gilbert v. Homar, 520 U.S. 924, 930 (1997) (explaining that due process is a "flexible" standard and "not a technical conception with a fixed content unrelated to time, place and circumstances" (first quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972); and then quoting Cafeteria & Rest. Workers v. McElroy, 367 U.S. 886, 895 (1961))). Plaintiffs have provided insufficient facts or argument to identify how the rules of evidence or rules of procedure in their case were fundamentally unfair, beyond their asserted violation of Article III and the Seventh Amendment. See 29 C.F.R. § 503.44 (providing for application of "The Rules of Practice and Procedure for Administrative Hearings Before the Office of Administrative Law Judges . . . at 29 CFR part 18" and "principles designed to ensure production of relevant and probative evidence" in DOL H-2B enforcement proceedings). The Court cannot find an independent due process violation based on these allegations alone.

Instead, Plaintiffs rely exclusively on Justice Gorsuch's concurring opinion in Jarkesy to support their due process arguments. See Doc. 27 at 24–26; Doc. 31 at 10–11; Jarkesy, 603 U.S. at 141–67 (Gorsuch, J., concurring). While persuasive, Justice Gorsuch's opinion remains non-precedential, and this Court is in no position to entertain Plaintiffs' invitation to disregard binding precedent. See, e.g., Doc. 27 at 25 (arguing in Plaintiffs' memorandum that "[t]o the extent that an earlier Supreme Court case holds otherwise, it should be overruled by the Supreme Court" (citation omitted)). Nor does the Court believe Justice Gorsuch's opinion supports the kind of sweeping due process relief requested here, beyond the reach of Article III and the Seventh Amendment. See Jarkesy, 603 U.S. at 150–51 (Gorsuch, J., concurring) (suggesting that

Article III challenges can be thought of as raising due process questions because deprivation of property demands "the process and proceedings of the common law," which historically "often meant *judicial* process" (emphasis in original) (quoting 3 J. Story, Commentaries on the Constitution of the United States § 1783, p. 661 (1883) (Story))). Without more, Plaintiffs' due process claim cannot succeed.

**D. Final Agency Action**

Defendants argue that Plaintiffs' claims under the APA are jurisdictionally barred because there has been no final agency action. See Doc. 18 at 34 (citing Chemours Co. FC, LLC v. U.S. EPA, 109 F.4th 179, 183 n.3 (3d Cir. 2024) ("[W]e view the finality requirement [in the Safe Drinking Water Act] as jurisdictional.")); APA § 10(c), 5 U.S.C. § 704 (authorizing judicial review of "final agency action for which there is no other adequate remedy in a court"); see also City of Phila. v. Sec'y U.S. Dep't of Interior, 179 F.4th 169, 183–86 (3d Cir. 2026) (directing dismissal of APA claims "for lack of jurisdiction" under section 704 because there was no "agency action" or finality).[6] They seek dismissal of these claims under Federal Rule of Civil

[6] The finality requirement under section 704 is not itself jurisdictional. See, e.g., Califano v. Sanders, 430 U.S. 99, 107 (1977) ("[T]he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action."); Treasurer of N.J. v. U.S. Dep't of Treasury, 684 F.3d 382, 399 (3d Cir. 2012) ("[T]he judicial review provisions of the APA such as section 704, are not jurisdictional, but rather 'provide a limited cause of action for parties adversely affected by agency action.'" (quoting Chehazeh v. Att'y Gen., 666 F.3d 118, 125 n.11 (3d Cir. 2012))). However, Plaintiffs do not appear to challenge Defendants' characterization of their motion as such, and the United States Court of Appeals for the Third Circuit implicitly adopted a lower court's approach of analyzing section 704 in connection with the APA's waiver of sovereign immunity (and thus subject-matter jurisdiction) just three months ago. See City of Phila. v. Burgum, 820 F. Supp. 3d 313, 332 (E.D. Pa. 2026) (explaining that "5 U.S.C. § 702 of the APA waives sovereign immunity for 'actions for non-monetary relief against an agency,' so sovereign immunity does not bar [a plaintiff's] claims, so long as the plaintiff shows those claims are valid under the APA," including by challenging a "final agency action" (first quoting Treasurer of N.J., 684 F.3d at 398; and then quoting Bennett v. Spear, 520 U.S. 154, 175 (1997))), vacated on other grounds sub nom., City of Phila. v. Sec'y U.S. Dep't of Interior, 179 F.4th 169 (3d Cir. 2026).

Procedure 12(b)(1). See Doc. 17 at 1; Fed. R. Civ. P. 12(b)(1) (authorizing motions to dismiss for "lack of subject-matter jurisdiction").

Plaintiffs do not attempt to assert that DOL's action here is final; rather, they argue that they should be excepted from the finality requirement because they bring structural constitutional challenges to the administrative proceeding itself. See Doc. 27 at 28; Doc. 31 at 11. However, as Defendants correctly point out, none of the cases Plaintiffs cite apply such an exception to the APA's finality requirement. See, e.g., Alpha Servs., LLC v. Looman, No. 23-2988, 2023 WL 6795545, at *7 (E.D. La. Oct. 13, 2023) (unreported) (addressing the question of venue); see Doc. 28 at 24–25.

Instead, two of the cases on which Plaintiffs rely analyze statutory preclusion and jurisdiction stripping. See Axon v. Fed. Trade Comm'n, 598 U.S. 175, 180, 191 (2023) (holding that the statutory review schemes of the Securities Exchange Act and Federal Trade Commission Act do not impliedly preclude federal-question jurisdiction to hear constitutional challenges to the structure or existence of these agency's administrative proceedings in part because participation in the proceedings themselves is "a [']here-and-now['] injury" that cannot be remedied on review (quoting Seila L. LLC v. Consumer Fin. Prot. Bureau, 591 U.S. 197, 212 (2020))); Leedom v. Kyne, 358 U.S. 184, 188–89, 191 (1958) (holding that the National Labor Relations Act's administrative review provisions do not statutorily preclude or strip federal court jurisdiction to hear claims that the National Labor Relations Board exceeded its statutory power). Statutory preclusion is a wholly separate doctrine from finality, and courts assess these barriers to reviewability separately. See, e.g., Am. Fed'n of Gov't Emps. v. Trump, 139 F.4th 1020, 1030–33, 1038–39 (9th Cir. 2025) (analyzing this doctrine in the context of statutory preclusion and jurisdiction stripping, separate and in addition to the analysis of finality); Tenn. v. Dep't of

Educ., 104 F.4th 577, 598–601, 603–07 (6th Cir. 2024) (same); Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd., 162 F.4th 908, 913–19 (8th Cir. 2025) (same); Sidak v. U.S. Int'l Trade Comm'n, 174 F.4th 151, 156, 158 (D.C. Cir. 2026) (same).

Plaintiffs also rely on two cases analyzing administrative exhaustion. See Barry v. Barchi, 443 U.S. 55, 63 n.10 (1979) (excusing failure to exhaust state administrative remedies because "exhaustion of administrative remedies is not required when 'the question of the adequacy of the administrative remedy . . . [is] for all practical purposes identical with the merits of [the plaintiff's] lawsuit'" (alteration in original) (quoting Gibson v. Berryhill, 411 U.S. 564, 575 (1973))); Weinberger v. Salfi, 422 U.S. 749, 766–67 (1975) (deciding that because the Social Security Act does not define "final decision," for purposes of permitting judicial review, the Secretary of Health, Education, and Welfare may determine when exhaustion is unnecessary). While the United States Supreme Court has held that the APA's finality requirement effectively codified the doctrine of exhaustion and cannot be judicially expanded, see Darby v. Cisneros, 509 U.S. 137, 153–54 (1993), this in no way means that judicially created exceptions to exhaustion excuse the APA's requirement of finality. Cf. Weinberger, 422 U.S. at 766 ("[A] 'final decision' is a statutorily specified jurisdictional prerequisite[,] . . . something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility . . . .").

Plaintiffs are free to bring their constitutional claims—Counts I through III—without waiting for final action by the ALJ; their APA claims, however, are barred for lack of finality. The Court therefore will grant Defendants' Motion to Dismiss (Doc. 17) as to Counts IV through VI.

## II. ORDER

For the reasons stated above, the Court hereby GRANTS Defendants' MOTION TO DISMISS, or in the Alternative, for Partial Summary Judgment (Doc. 17) only as to Plaintiffs' APA Counts (Counts IV, V and VI), and DISMISSES these claims without prejudice to refiling, should DOL's action become final. The Court otherwise DENIES both Defendants' MOTION (Doc. 17) and Plaintiffs' MOTION for Summary Judgment (Doc. 25) regarding the public rights exception, without prejudice to refiling following the United States Supreme Court's ruling in Dep't of Lab. v. Sun Valley Orchards, LLC, No. 25-966 (U.S. cert. granted Apr. 27, 2026). This action hereby is STAYED and ADMINISTRATIVELY CLOSED pending the Supreme Court's decision in that case. It will be restored to the Court's active calendar upon motion by either party.

IT IS SO ORDERED.

September 30, 2026

s/Cathy Bissoon
Cathy Bissoon
Chief United States District Judge

cc (via ECF email notification):

All Counsel of Record